**Gen. 209]** **209**

## ORPHANS COURT

**ELECTIONS – PUBLIC OFFICERS AND EMPLOYEES – COMMISSION SHOULD NOT BE ISSUED TO CANDIDATE RECENTLY ELECTED TO ORPHANS' COURT FOR BALTIMORE CITY BECAUSE CANDIDATE LACKS A CONTINUING QUALIFICATION FOR THAT OFFICE THAT WAS CONTAINED IN A CONSTITUTIONAL AMENDMENT RATIFIED BY THE VOTERS AT THE SAME ELECTION**

December 13, 2010

*The Honorable Martin O'Malley*
*Governor of Maryland*

You have asked for our opinion concerning the issuance of a commission for a position on the Orphans' Court for Baltimore City. At the election this past November, the voters approved a constitutional amendment that requires judges of the Orphans' Court for Baltimore City to be members of the Maryland bar. At the same election a candidate not admitted to practice law in Maryland received a sufficient number of votes to be elected to the Orphans' Court for Baltimore City. You ask whether the State Constitution permits the issuance of a commission to that individual under these circumstances.

In our opinion, the issuance of a commission in these circumstances would be at odds with the Maryland Constitution. Accordingly, the commission should not be issued.[1]

### I

### Background

### A.    *Constitutional Qualifications for Orphans' Court Judges*

Until recently, the only constitutional qualifications to be a judge of an Orphans' Court in 21 counties and Baltimore City were

---

[1] We thus agree with the conclusion previously reached by Assistant Attorney General David K. Hayes on this question. *See* Letter of Assistant Attorney General David K. Hayes to Judge Joyce M. Baylor-Thompson (July 8, 2010).

citizenship and residence in the jurisdiction for at least one year preceding the election.[2] Maryland Constitution, Article IV, §40. The Constitution did not require that Orphans' Court judges be members of the bar. *Kadan v. Board of Supervisors of Elections,* 273 Md. 406, 329 A.2d 702 (1974). However, during its most recent session, the General Assembly enacted a constitutional amendment adding bar membership as a qualification for Orphans' Court judges in Baltimore City. Chapter 481, Laws of Maryland 2010. The relevant provision now reads:

> The qualified voters of the City of Baltimore shall elect three judges of the Orphans' Court for Baltimore City who shall be citizens of the State and residents, for the twelve months preceding, in Baltimore City and who have been admitted to practice law in this State and are members in good standing of the Maryland Bar.

Maryland Constitution, Article IV, §40(b). The voters ratified the amendment at the November 2010 election and, in accordance with Article XIV, §1, of the Constitution, the Governor proclaimed it effective on December 1, 2010.

### B. 2010 Election for Baltimore City Orphans' Court

At the November 2010 general election – the same election at which voters ratified the constitutional amendment concerning qualifications of Orphans' Court judges – the voters of Baltimore City elected three individuals as judges of the Orphans' Court. Two of the successful candidates were incumbent judges who are members of the Maryland bar. The third successful candidate, Ramona Moore Baker, is not admitted to practice law in Maryland.[3]

---

[2] In Montgomery and Harford counties, the circuit court performs the functions of an Orphans' Court. Maryland Constitution, Article IV, §20(b).

[3] We understand that Ms. Baker has not contended that she is a member of the Maryland bar. In any event, her lack of bar membership is readily determinable from the Court of Appeals website. *See* http://mdcourts.gov/cpf/attylist.html (last visited on December 10, 2010).

The Board of State Canvassers has certified the results of the election and the question is now presented as to whether a commission may issue to Ms. Baker in light of the constitutional amendment.

**II**

**Analysis**

We address first the question whether the constitutional amendment precludes an individual from serving as a judge on the Orphans' Court for Baltimore City when the amendment was not effective at the time the individual ran for election. Second, we consider how the answer to that question affects the issuance of a commission to a successful candidate.

**A.     *Whether Bar Membership is a Continuing Qualification***

As outlined above, an individual must now be a member of the Maryland bar in order to be eligible to serve as an Orphans' Court judge in Baltimore City. The general rule is that eligibility for an office is a continuing requirement. It has been stated as follows:

> Eligibility to public office is of a continuing nature and must exist at the commencement of the term of office and during the occupancy of the office. *The fact that a candidate may have been qualified at the time of his or her election is not sufficient to entitle him or her to hold the office, if at the time of the commencement of the term or during the continuance of the incumbency he or she ceases to be qualified*.

63C Am.Jur.2d *Public Officers and Employees* §56 (2009) (emphasis added). *See also* 67 C.J.S. *Officers and Public Employees* §25 ("One who is not eligible is not regarded as elected to office, although having received the highest number of votes cast ..."). Although there are no Maryland cases directly on point, the Court of Appeals has employed the same reasoning to hold that the appointment of a person as a justice of the peace who failed to satisfy the constitutional requirements for the position was a

"nullity."  *Kimble v. Bender*, 173 Md. 608, 622-23, 196 A. 409 (1938).[4]

It might be argued that the language of the particular constitutional provision concerning qualifications of Orphans' Court judges limits its application to the time of election.  In particular, in describing the qualifications of an Orphans' Court judge, Article IV, §40 states that "[t]he qualified voters ... shall elect" an individual with the specified qualifications.[5]  Even when a qualification for office is stated with respect to an election, it is usually deemed to be continuing in nature.  *Dorf v. Skolnik*, 280 Md. 101, 115-16, 371 A.2d 1094 (1977); 80 *Opinions of the Attorney General* 269 (1995); *see also State ex rel. Fugina v. Pierce*, 209 N.W. 693 (1926) (membership in bar a continuing qualification for elected county judge, even though provision referred to qualifications "at the time of election").

The legislative history of the constitutional amendment confirms that it was designed to codify the practice of having lawyers serve as Orphans' Court judges in Baltimore City.  Proponents of the bill included the Maryland Association of the Judges of the Orphans' Courts, the Estate and Trust Law Section of the Maryland State Bar Association, and the Baltimore City delegation.  Testimony in support of the bill noted that, for many years, the judges in Baltimore City had all been members of the bar and that the nature of the cases before that court required legal knowledge and analysis.  *See* Letter to House Judiciary Committee

---

[4] In *Kimble*, the Court held that, until the individual was found to be ineligible, his official acts would remain be valid under the "*de facto* officer" doctrine.  173 Md. at 622-23.

[5] The Constitution uses a variety of phrasings to describe the qualifications for various constitutional offices.  Some constitutional provisions speak directly in terms of eligibility.  *See* Article II, §5 ("A person to be eligible for the office [of Governor or Lieutenant Governor]..."), Article III, §9 ("A person is eligible to serve [as a legislator]..."), Article V, §10 ("No person shall be eligible to [be State's Attorney]...").  Other provisions simply state qualifications as mandates.  *See* Article IV, §2 ("The Judges of all of the said Courts shall be ...").  The specification of qualifications for sheriff is phrased in language somewhat similar to that for Orphans' Court judges:  "There shall be elected in each county ... one person, resident in said county..., above the age of twenty-five years, and for at least five years preceding his election a citizen of the State ..." Article IV, §44.

from Maryland Association of the Judges of the Orphans' Courts concerning House Bill 417 (February 17, 2010). At a hearing on the Senate version of the bill, proponents explained that it was designed to ensure that future judges would have similar legal training and to foreclose service by a lay person. Recording of hearing before Senate Judicial Proceedings Committee on Senate Bill 770 (March 9, 2010).

It would thus be consistent with both the usual construction of qualifications for office and with the purpose of the constitutional amendment to treat bar membership as a continuing qualification for Orphans' Court judges in Baltimore City.

**B.    *Whether a Commission Should Issue***

Once the results of an election are certified, the Governor issues commissions to the successful candidates and the candidates then take the oath of office. Maryland Constitution, Article IV, §11; *Magruder v. Tuck*, 25 Md. 217 (1866). The issuance of a commission by the Governor is a largely ministerial act. *Magruder v. Swann*, 25 Md. 173, 208-9 (1866). For example, if there is a contest over the results of an election of a judge, the Governor is to issue the commission and refer the contest to the House of Delegates. Maryland Constitution, Article IV, §12; *Ijams v. Duvall*, 85 Md. 252, 36 A. 819 (1897).

In this instance, however, there is no contest over the election. There is no dispute that Ms. Baker garnered the requisite number of votes to win one of the three Orphans' Court seats at issue in the election. There is also no dispute that she lacks one of the constitutional qualifications for the position. Accordingly, as indicated above, she cannot serve as an Orphans' Court judge in Baltimore City. In these circumstances, the issuance of a commission to her, although a ministerial act, would be at odds with the State Constitution.

The Florida Supreme Court considered whether a commission should issue in a case involving very similar facts. *In re Advisory Opinion to the Governor*, 192 So.2d 757 (1966). In that case, an individual was elected a circuit judge at the same election at which the voters ratified an amendment to the state constitution that rendered him ineligible for the position. (The amendment required that a judge have been a member of the state bar for at least five years; the candidate had been a member of the state bar for only four

years).  The court held that, given that the candidate no longer possessed the qualifications for the office, the Florida governor was not authorized to sign a commission for the candidate.  *Id*. at 759. In our view the Maryland Constitution requires the same result.

## III

### Conclusion

For the reasons stated above, it is our opinion that a commission should not be issued to a successful candidate who indisputably lacks a continuing qualification for Orphans' Court judge in Baltimore City.

Douglas F. Gansler
*Attorney General*

Robert N. McDonald
*Chief Counsel*
   *Opinions and Advice*

DOUGLAS F. GANSLER
*Attorney General*



KATHERINE WINFREE
*Chief Deputy Attorney General*

JOHN B. HOWARD, JR.
*Deputy Attorney General*

## STATE OF MARYLAND
## OFFICE OF THE ATTORNEY GENERAL

FACSIMILE NO.

July 8, 2010

WRITER'S DIRECT DIAL NO.

(410) 576-7293

Honorable Joyce M. Baylor-Thompson
Orphans' Court for Baltimore City
Suite 311
Courthouse East
Baltimore, Maryland 21202

Re:   Baltimore City Orphans' Court Judicial Qualifications

Dear Judge Baylor-Thompson,

You have posed the following question in your letter of April 8, 2010. If an individual files to run for Orphans' Court Judge in Baltimore City, and that individual is not a lawyer, and the referendum passes, would that individual be restricted from serving on the bench if he/she wins the election? My advice is that such an individual would be barred from serving because he or she would not be qualified should the constitutional amendment be approved by the voters.

At the present time an individual who is not an attorney may run for the office of Orphans' Court Judge in Baltimore City. The only requirements under the Maryland Constitution are that an individual be a citizen of Maryland and a resident of Baltimore City or the county for the twelve months preceding in the City or county in which they are seeking election. However, in this year's session of the legislature, a bill (HB 417) was passed and enacted into law (Chapter 481) which provided for placing before the voters of the state in November, a referendum on an amendment to the Maryland Constitution which, if approved, would add a qualification to serve as an orphans' court judge in Baltimore City. That additional qualification is that a judge must be admitted to practice law in Maryland and is a member in good standing of the Maryland Bar.

Although there is no Maryland precedent on this subject, the general rule was set out in *Supreme Court of Wyoming v. Larson*, 539 P.2d 352, 355 (1975), citing a number of authorities.

> The general rule with respect to public officers is that eligibility to the office is a continuing requirement, and an officer who is

qualified at the time of election but who is not qualified at the time of commencement of his term cannot hold the office. (Citations omitted). The rules relating to public officers generally are applicable in the case of judicial officers. (Citations omitted).

The court also cited a Wisconsin case, *State ex rel, Fugina v. Pierce*, 209 N.W. 693 (1926), in which an individual who was a member of the bar, as required, had been elected to a county judgeship. However, his certificate of admission was subsequently found to have been improperly issued. The Wisconsin court in deciding the elected judge was not eligible to hold office, construed a statute providing that no person would be eligible for election or appointment. as a county judge, who, at the time of his election was not an attorney of a court of record. The Wisconsin Supreme Court stated,

> While this statute by its language provides that such qualification shall exist at the time of election or appointment, still there can be no question but that such qualification is a continuing one, that is, it must subsist during the entire term of office.

Another case which is very much on point to the question you have posed, is *In re Advisory Opinion to the Governor, Fla.*, 192 So.2d 757 (1966).The governor of Florida requested an advisory opinion from the Supreme Court of Florida with regard to whether he should sign the commission for office of an individual who had won the office of circuit court judge in a general election. In the same election an amendment to the constitution was voted on and passed which changed the qualifications for the office of circuit court judge. The result was that the candidate who was qualified to hold the position of judge when he ran for office was subsequent to the election and the passage of the amendment, unqualified. The Florida Supreme Court decided that since the candidate did not possess the qualifications required by the amendment prior to the date established for him to qualify for the office that the Governor should not sign the commission.

An individual who presently meets the qualifications under the Maryland Constitution to serve as an Orphans' Court judge may run for that office in the upcoming election. However, if the qualifications are changed by the passage of the amendment to the Constitution, and that individual no longer possesses all of the qualifications set out in the amendment, then he or she may not serve. In fact, the oath of office found in Article I, Section 9 of the Maryland Constitution, required to be taken by every elected officer, provides for the officer to "support the Constitution" and to "faithfully .... execute the office ..... according to the Constitution and Laws of this State....." An individual elected, but unqualified for the office, could not take the oath, nor could an individual serving, but unqualified, continue to serve without violating the oath and the Constitution.

I hope this letter is responsive to your inquiry. Of course, as I have pointed out, there is no Maryland precedent dealing with the situation you have posed in your question. The authorities cited by me though seem to rest on sound reasoning. The final answer though, if the matter came before the courts in this state, would rest with the Court of Appeals.

Very truly yours,

David K. Hayes
Assistant Attorney General

Hon. Joyce M. Baylor-Thompson, President
Hon. Athena Malloy Groves, Vice President

Hon. Leslie M. Downs, Secretary
Hon. Penelope A. Keating, Treasurer

February 17, 2010

Judiciary Committee
House Office Building
Room 101
Annapolis, Maryland 21401-1912

To:     Honorable Joseph F. Vallario, Jr., Chair
        Honorable Samuel I. Rosenberg, Vice Chair
        All Committee Members

RE: **Testimony HB 417**

## Jurisdiction Of the Orphans' Court

The Orphans' Court is a court of limited jurisdiction. This court addresses all issues pertaining to wills and estate administration, including guardianships of the person and property for minors. This court is what you may call the "probate court," in that it makes decisions regarding an individuals' most precious assets, those that they leave after death to their love ones to cherish.

## The Constitution of Maryland & Reasons to Support HB 417

The current Constitution of Maryland, Article IV, Section 40 indicates two qualifications one must have to become an Orphans' Court Judge: a) that the individuals be citizens of the State and b) individuals be residents for the twelve months preceding in the City or County for which they may be elected. There is no requirement that an Orphans' Court Judge have any legal training or knowledge of the law to perform the job. In essence, someone could serve in this capacity that is illiterate, a high school drop out, even a criminal felon. There is nothing in the Constitution to prevent these people from running for the seat as an Orphans' Court Judge.

When the founders of this Constitution set this language in place, they had no idea that the duties of the Orphans' Court would evolve into a court where some of the most complex estate issues are decided, including decisions where the value could be millions of dollars in assets. The question is, would you want someone handling your assets and deciding on who gets what without any legal training or legal knowledge of the law?

The job of an Orphans' Court Judge requires one to have legal knowledge of the law. Many of the litigants that come before the court are individuals without legal counsel (pro-se). These individuals are looking to the judge to guide them through the maze of estate administration. It is not just having the judge make a simple decision as to who gets what, but all decisions that are made are legally based. An Orphans' Court judge must know the Rules of

Procedure, the Rules of Evidence, the Estates and Trusts Article of the Annotated Code in addition to having the ability to do legal research and legal writing. Many of the cases that come before this court overlap into other areas of the law such as property law, tax law, financial and commercial transactions laws, and family law. It is important for a judge to interpret the laws as they apply to the facts of each case. The art of reading case law and interpreting such case law is very difficult unless you have had training in this area. This court is required to use the same rules of law as any other court in the State of Maryland. For example: the Baltimore City Orphans' Court has addressed all issues in the estate of Marion I. Knott. The initial petition for probate was filed in 2003. This estate stayed open for an inordinate amount of time. There were over 300 docket entries on this estate. Many of the issues decided upon by the court involved estate questions spanning from the jurisdiction of the Orphans' Court to subject matters including but not limited to wills, trusts, standing of the parties, ademption of estate assets, discovery and sanctions. This case was appealed all the way up to the Court of Special Appeals and was remanded back to the Orphans' Court for further evidentiary proceedings. There were over 100 docket entries on issues of discovery alone. This case generated work beyond the normal confines of simple estate issues. This court has generated memorandums of law and orders of the court that involved an inordinate amount of research into other areas of the law that impact upon estate administration. Many of the memorandums in this case were 25-30 pages long, and involved a lot of case law research. It took approximately two years of legal fighting amongst the heirs before the court could permanently name a personal representative in this estate. The litigation in this estate was voluminous and the court has four thick files to prove it. The court is addressing more of these types of cases and it is necessary for that individual judge to know and adhere to the law.

HB417 is a rationally sound bill in that it allows for persons to sit on the bench that have had some legal basis or knowledge of the law. The bill recognizes the needs of Baltimore City without forcing other jurisdictions into a situation that may not be warranted. It is our understanding that the entire City delegation supports this legislation.

The Orphans' Court for Baltimore City is a full time court. Many of the other Orphans' Courts around the state are not full time courts. This court generates an enormous amount of work. This court has served as a leader to other Orphans' Courts around the state. Maintaining the integrity of the court is of utmost importance. Baltimore City Orphans' Court has traditionally had attorneys on its bench for the last 40 years. It is important that Baltimore City maintain the integrity and excellent reputation it has garnered throughout the state of Maryland. There is no backlog of work in the City Orphans' Court. Each judge is able to individually hear cases. If a non- attorney were to sit on the Bench in Baltimore City, that individually would slow down the work of the court, because that individual would not be able to sit by themselves, sign orders by themselves, or perform any of the legal matters without the assistant of an attorney judge. Baltimore City indicates that this individual would create a backlog of cases in its court. Each judge on the Baltimore City Orphans' Court can sit alone, whereas most other courts of similar jurisdiction must sit enbanc where two or more judges must sit at any proceeding in that court. The Maryland Association of the Judges of the Orphans' Court (MAJOC) in no way is endorsing diversity in the Orphans' Court, but in reality, diversity already exists from one jurisdiction to another. We see this bill as one that is necessary in order for Baltimore City to effectively address the needs of its court and the citizens of Baltimore City. Being that this

legislation affects a local jurisdiction, and Baltimore City Orphans' Court would be negatively affected without this legislation, the **MAJOC would urge passage of this legislation**. It is important for the citizens of each jurisdiction to feel confident and assured that when they come before the Orphans' Court, they will be coming before judges that are competent and have had some legal training. HB417 invites people to the table who have had such training.